**CARLSON LYNCH, LLP**
TODD D. CARPENTER (234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:  619-762-1910
Fax:  619-756-6991

**CARLSON LYNCH LLP**
GARY F. LYNCH (*to be admitted pro hac vice*)
gynch@carlsonlynch.com
KELLY K. IVERSON (*to be admitted pro hac vice*)
kiverson@carlsonlynch.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel:  412-322-9243
Fax:  412-231-0246

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH KUHEN, CPA d/b/a/ R. KUHEN & CO INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC.; and SENTINEL INSURANCE COMPANY, LTD.,<br><br>Defendants. | Case No. **'20 CV1669 CAB LL**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, RALPH KUHEN, CPA d/b/a/ R. KUHEN & CO INC. ("Plaintiff"), brings this Class Action Complaint on behalf of itself and all others similarly situated (the "Class"), against Defendants, THE HARTFORD FINANCIAL SERVICES GROUP, INC., and SENTINEL INSURANCE COMPANY, LTD. (collectively, "Defendants"), alleging as follows:

## NATURE OF THE CASE

1.     This is a civil class action for declaratory relief and breach of contract arising from Plaintiff's contract of insurance with the Defendants.

2.     At the direction of local, state, and/or federal authorities, and/or due to the COVID-19 public health emergency, Plaintiff was forced to temporarily close its business beginning on March 20, 2020, causing an interruption to and loss of Plaintiff's business income.

3.     Plaintiff and the Class purchased and paid for an "all-risk" Commercial Property Coverage insurance policy from Defendants, which provides broad property insurance coverage for all non-excluded, lost business income, including the losses asserted herein.

4.     Plaintiff submitted timely notice of its claim to Defendants, but Defendants have refused to provide the purchased coverage to its insured, and have denied Plaintiff's claim for benefits under the policy.

5.     Defendants have similarly refused to, or will refuse to, honor their obligations under the "all-risk" policy(ies) purchased by Plaintiff and the other members of the putative Class of insureds.

**PARTIES**

6.     Plaintiff, RALPH KUHEN, CPA d/b/a/ R. KUHEN & CO INC. is an accounting firm incorporated under the laws of the State of California, and is a citizen of California.  Plaintiff maintains its principal office location at 4440 Von Karman Avenue, Suite 150, Newport Beach, California 92660 (the "Covered Property").

7.     Defendant, HARTFORD FINANCIAL SERVICES GROUP, INC. is a Delaware corporation with its principal place of business in Hartford, Connecticut, and is a citizen of Connecticut. It owns subsidiaries, directly and indirectly, that issue, *inter alia*, commercial property insurance.

8.     Defendant, SENTINEL INSURANCE COMPANY, LTD., is a Connecticut corporation with its principal place of business in Hartford, Connecticut, and is a citizen of Connecticut. It is a subsidiary of HARTFORD FINANCIAL SERVICES GROUP, INC. and a member of The Hartford group of insurance companies.

CLASS ACTION COMPLAINT

## JURISDICTION

9.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant (*i.e.,* so-called "minimum diversity of citizenship,") and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Here, there exists minimal diversity of citizenship because Plaintiff (and some members of the Class) and Defendants are citizens of different states, and the aggregated claims of the putative Class members exceed $5,000,000, exclusive of interest and costs.

10.    The Court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities in California.  Defendants have, at all relevant times, transacted, solicited, and conducted business in California through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in California.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this district.

## FACTUAL BACKGROUND

**Plaintiff Purchased an "All-Risk" Policy of Property Insurance That Broadly Provides Coverage for Loss of Business Income, Among Other Things**

12.    Plaintiff purchased a contract of insurance from Defendants, whereby Plaintiff agreed to make payments (in the form of premiums) to Defendants in exchange for Defendants' promise to indemnify Plaintiff for losses at the Covered Property, including, but not limited to, business income losses.

13.    Plaintiff's contract of insurance with Defendants bears Policy Number 51SBAIA5178SC (the "Policy") and is effective for the period of March 1, 2020 to March 1, 2021 (the "Policy Term").  The Policy is attached hereto as **Exhibit A**.

14.    Plaintiff paid all premiums owed to Defendants under the Policy, and Defendants accepted all such premiums from Plaintiff.

15.    The Policy is a form policy issued by Defendants.

16.    The Policy is an "all-risk" policy, which provides the broadest property insurance coverage available.

17.    The Policy provides coverage for "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss."

18.    The premises described in the Declarations of the Policy is the Covered Property.

19.    The Policy defines "Covered Cause of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a. Excluded . . . or Limited [under the Policy]."

20.    The Policy does not define the phrase "direct physical loss of or physical damage to."

21.    However, the use of the disjunctive "or" in the phrase "direct physical loss of or physical damage to" means that coverage is triggered if either a physical loss of property or physical damage to property occurs.   The concepts are separate and distinct and cannot be conflated.

22.    Physical loss of, or physical damage to, property may be reasonably interpreted to occur when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for ordinary human occupancy and/or continued use.

23.    The Policy provides Plaintiff with, *inter alia*, various business income and extra expense coverages during the Policy Term.

24.    Under the Policy, Defendants agree to pay for the actual loss of Business Income sustained due to the necessary suspension of operations during the period of restoration. "The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises . . . .'" The Policy describes the scheduled

premises as "4440 Von Karman Avenue, Suite 150, Newport Beach, California 92660," the Covered Property.

25.    Additional coverage is provided under the Policy for business income losses resulting from an "order of a civil authority" which prohibits access to the Covered Property, related to a "Covered Cause of Loss" at property in the immediate area of the Covered Property.

26.    The Policy also provides coverage for "actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss." Dependent property is defined as "property owned, leased or operated by others whom you depend on to: a) Deliver materials or services to you . . . b) Accept your products or services; c) Manufacture your products for delivery to your customers under contract of sale; or d) Attract customers to your business premises."

27.    Members of the Class also purchased a policy of insurance from Defendants providing for the same business income loss coverage and using the same form policy provisions.

**In Response to Covid-19, California and Other State Governments Issue Sweeping Orders Shutting Down "Non-Essential" Businesses**

28.    COVID-19 has spread, and continues to spread, rapidly across the United States and has been declared a public health emergency of international concern by the World Health Organization. *See* https://www.health.harvard.edu/diseases-and-conditions/coronavirus-resource-center (last accessed May 6, 2020).

29.    COVID-19 is highly contagious and can be spread exponentially in the community by persons who are symptomatic, asymptomatic or pre-symptomatic. In addition to transmission through airborne respiratory droplets, the COVID-19 virus can physically attach to and stay on surfaces of objects or materials for many days.

30.    According to a study published in *The New England Journal of Medicine*, COVID-19 is widely accepted as a cause of real physical loss and damage. It remains

CLASS ACTION COMPLAINT

stable and transmittable in aerosols for up to three hours, and on surfaces for up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed May 6, 2020).

31.    Another study, published in the *Journal of Hospital Infection*, found: "Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30°C or more the duration of persistence is shorter." *See*    https://www.inverse.com/science/coronavirus-4-studies-explain-how-covid-19-sticks-to-surfaces (last accessed May 6, 2020).

32.    In response to the COVID-19 pandemic, on March 4, 2020, California Governor, Gavin Newsom, declared a State of Emergency for California. [1]

33.    On March 19, 2020, the State Public Health Officer and Director of the California Department of Public Heath, Sonia Angell, issued an Order of the State Public Health Officer mandating that "all individuals living in the State of California to stay at home or at their place of residence . . . ." The Order provided exceptions that allowed certain businesses to remain operational during this time. Plaintiff's business was not one of them.[2]

34.    On March 19, 2020, Governor Newsom issued a statewide stay-at-home order,[3] which incorporated Public Health Officer Angell's Order.

35.    On May 7, 2020, Governor Newsom issued an order[4] permitting a gradual statewide movement from Stage 1 to Stage 2, which entails a slow reopening of the State

---

[1] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf (last accessed July 6, 2020).

[2] https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19.2020.pdf

[3] *See* https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (last accessed July 6, 2020).

[4] *See* https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%205-7-2020.pdf (last accessed July 6, 2020).

CLASS ACTION COMPLAINT

of California on a county by county basis.[5] Orange County, where Plaintiff's business is located, moved to Stage 2 on May 23, 2020.[6]

36.    In Stage 2, offices such as Plaintiff's were allowed to open, but only "when telework not possible."[7]

37.    In response to the Orders provided by Governor Newson and Public Health Officer Angell, non-essential businesses, such as Plaintiff's, were closed.

38.    The State of California is continuing to operate under a stay-at-home order, and is currently in Stage 2 of re-opening, with plans on gradually opening more businesses across the state over time to minimize the spread of COVID-19.

39.    Most other states, including those in which the putative Class members reside and/or do business, have issued similar compulsory shut-down orders for "non-essential" businesses, or businesses deemed not to be "life sustaining."

40.    The closure of all non-essential and non-life-sustaining businesses evidences an awareness on the part of both state and local governments that COVID-19 causes loss of or damage to property.  This is particularly true in places where in person business is conducted, as the contact and interaction necessarily incident to such businesses causes a heightened risk of the property becoming contaminated.

41.    For example, a New York City Executive Order entered on March 16, 2020, specifically acknowledged that: "[COVID-19] physically is causing property loss and damage." *See* https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf (last accessed May 6, 2020).

42.    Similarly, in a March 16, 2020 proclamation, the City of New Orleans acknowledged COVID-19's "propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in

---

[5] *See* https://www.gov.ca.gov/wp-content/uploads/2020/05/5.4.20-Update-on-Californias-Pandemic-Roadmap.pdf (last accessed July 6, 2020).
[6] https://spectrumnews1.com/ca/la-west/health/2020/05/24/orange-county-moves-forward-with-phase-2-of-reopening
[7] https://covid19.ca.gov/roadmap/

CLASS ACTION COMPLAINT

certain circumstances." *See* https://nola.gov/mayor/executive-orders/emergency-declarations/03162020-mayoral-proclamation-to-promulgate-emergency-orders-during-the-state-of-emergency-due-to-co/ (last accessed May 6, 2020).

43.    In upholding the Governor of Pennsylvania's Proclamation of a state-wide disaster and the Executive Orders mandating the closure of businesses within Pennsylvania, the Pennsylvania Supreme Court noted the significant risk of the spread of the COVID-19 virus, even in locations where the disease has not been detected:

> Covid-19 does not spread because the virus is "at" a particular location. Instead it spreads because of person-to-person contact, as it has an incubation period of up to fourteen days and that one in four carriers of the virus are asymptomatic. Respondents' Brief at 4 (citing Coronavirus Disease 2019, "Symptoms," CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed 4/9/2020)). The virus can live on surfaces for up to four days and can remain in the air within confined areas and structures. *Id.* (citing National Institutes of Health, "Study suggests new coronavirus may remain on surfaces for days," (Mar. 27, 2020) https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last accessed 4/9/2020) and Joshua Rabinowitz and Caroline Bartman, "These Coronavirus Exposures Might be the Most Dangerous," The New York Times (Apr. 1, 2020) https://www.nytimes.com/2020/04/01/opinion/coronavirus-viral-dose.html).

*Friends of DeVito v. Wolf*, 227 A. 3d 872, 891 (Pa. 2020).

44.    Because the COVID-19 virus can survive on surfaces for up to fourteen days, the Pennsylvania Supreme Court ultimately concluded that "any location . . . where two or more people can congregate is within the disaster area."

45.    Further, the World Health Organization ("WHO") has indicated that airborne transmission, "particularly in specific indoor locations, such as crowded and inadequately ventilated spaces" poses a significant risk.[8]

46.    The CDC has warned that exposure to an individual with COVID-19 for fifteen minutes or more, or close contact within six feet of distance, is enough to justify a personal quarantine.[9]

---

[8] https://apnews.com/648feb226473f9841920abd6ffb004c7

[9] https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

47.    Experts believe that "a second wave" of COVID-19 cases will occur in the fall and winter of 2020, coinciding with the flu season. As Dr. Robert Glatter, emergency physician at Lenox Hill Hospital in New York City stated: "[the second wave] will likely be worse than the initial wave we experienced this spring."[10]

48.    Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

**Plaintiff Submits a Claim Under Its "All-Risk" Policy, and Defendants Wrongly Fail and Refuse To Honor Its Obligations Respecting Same**

49.    As a result of the orders, guidance and protocols issued by the Governor of California, Public Health Officer, the CDC and the WHO relating to the Plaintiff's business (collectively the "**Mandated Shutdown Rules**"), the Covered Property effectively closed on March 20, 2020, and has not been able to fully open since that time.

50.    Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income, including additional expenses covered under the Policy due to the constraints of the Mandated Shutdown Rules.

51.    On or about August 10, 2020, Plaintiff provided notice to Defendants of its claim for the interruption to its business.

52.    Defendants responded to Plaintiff with a letter, dated August 11, 2020 (attached hereto as **Exhibit B**), indicating, "the coronavirus did not cause property damage at your place of business or in the immediate area . . . ." Further, Defendants state "[e]ven if the virus did cause damage, it is excluded from the policy, and the limited coverage available for losses caused by virus does not apply to the facts of your loss."

**Contrary To Defendants' Position, Plaintiff's Losses Arise From Direct Physical Loss Or Damage**

53.    Plaintiff's Covered Property suffered direct physical loss or physical damage due to the Mandated Shutdown Rules requiring Plaintiff to discontinue its

---

[10] https://www.healthline.com/health-news/what-a-covid-19-wave-in-the-fall-could-look-like#Educated-guesses-about-the-future

CLASS ACTION COMPLAINT

primary use of the Covered Property.  The Mandated Shutdown Rules, in and of
themselves, constitute a Covered Cause of Loss within the meaning of the Policy.

54.    Alternatively, and to the extent the Mandated Shutdown Rules do not
constitute a Covered Cause of Loss within the meaning of the Policy, the COVID-19
public health emergency and the ubiquitous nature of the COVID-19 virus caused a
direct physical loss or physical damage to Plaintiff's Covered Property. Specifically, the
Covered Property has been rendered unusable for its intended purpose because the
highly contagious nature of COVID-19, particularly when people gather inside a
building or other closed space for extended periods of time, precludes any meaningful
use of the Covered Property.

55.    Further, and as an additional basis for coverage under the Policy, the
ubiquitous nature of the COVID-19 virus, as explained above, caused direct physical
loss or physical damage to property other than Plaintiff's Covered Property, and such
loss or damage resulted in an "action by civil authority" prohibiting access to Plaintiff's
Covered Property, within the meaning of the Policy.

56.    Additionally, Plaintiff's "dependent property" suffered direct physical loss
or physical damage as a result of the Mandatory Shutdown Rules, or in the alternative,
the ubiquitous nature of the COVID-19 virus, resulting in lost business income to
Plaintiff, within the meaning of the Policy.

**Contrary To Defendants' Position, The Virus Exclusion Does Not Apply**

57.    The Policy contains a coverage exclusion for losses caused by "[p]resence,
growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus."
("Virus Exclusion").

58.    The Virus Exclusion does not preclude coverage for Plaintiff's claim under
the Policy.

59.    First, to the extent that the governmental orders, in and of themselves,
constitute direct physical loss of or physical damage to Plaintiff's Covered Properties,
the Virus Exclusion simply does not apply.

10

60.    Further, to the extent that the coverage under the Policy derives from direct physical loss or physical damage caused by the COVID-19 virus, either to Plaintiff's Covered Properties or to property other than Plaintiff's Covered Properties, Defendants should be estopped from enforcing the Virus Exclusion, on principles of regulatory estoppel, as well as general public policy.

61.    In 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of various virus exclusion provisions.

62.    In their filings with the various state regulators (including California), on behalf of the insurers, ISO and AAIS represented that the adoption of the virus exclusion provisions were only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

63.    Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

64.    Similarly, AAIS, in its "Filing Memorandum" in support of the adoption of virus exclusion provisions, represented:

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .

> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded  . . .

65.    The foregoing representations made by the insurance industry were false. By 2006, the time of the state applications to approve the virus exclusion provisions, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

66.    The foregoing assertions by the insurance industry (including Defendants), made to obtain regulatory approval of virus exclusion provisions, were in fact misrepresentations and for this reason, among other public policy concerns, insurers should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

67.    In securing approval for the adoption of virus exclusions by misrepresenting to the state regulators that such provisions would not change the scope of coverage, the insurance industry effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.  Under the doctrine of regulatory estoppel, the Court should not permit the insurance industry to benefit from this type of duplicitous conduct before the state regulators.

68.    Upon information and belief, Defendants have denied, or will deny, other Class members' claims for coverage under their "all-risk" property damage policies issued by Defendants.

69.    Defendants' denial of lost business income claims has left Plaintiff and the Class without vital coverage acquired to ensure the survival of their businesses during this temporary suspension of operations.

## CLASS ACTION ALLEGATIONS

70.    Plaintiff brings this action individually and as a class action on behalf of the Class, defined as follows:

All policyholders in the United States who purchased commercial property coverage, including business or interruption income (and extra expense) coverage from Defendants and who have been denied coverage under their policy for lost business income after being ordered by a governmental

12

entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations.

71.    Excluded from the Class are Defendants and its officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their staff.

72.    The members of the Class are so numerous and geographically dispersed that joinder would be impracticable. Class members are readily identifiable from information and records in Defendants' possession, custody, or control.

73.    There is a well-defined community of interest in the common questions of law and fact affecting the Class members. These common legal and factual questions include, but are not limited to:

a.    whether Defendants owed coverage to Plaintiff and the Class;

b.    whether any exclusions to coverage apply;

c.    whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

d.    whether Plaintiff and members of the Class are entitled to equitable, declaratory and/or other relief, and if so, the nature of such relief.

74.    Plaintiff's claims are typical of the claims of the absent class members and have a common origin and basis. Plaintiff and absent Class members are all injured by Defendants' refusal to afford the purchased coverage. Plaintiff's claims arise from the same practices and course of conduct giving rise to the claims of the absent Class members and are based on the same legal theories, namely the refusal to provide insurance coverage for the loss. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

75.     Plaintiff will fully and adequately assert and protect the interests of the absent Class members and has retained Class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiff nor Plaintiff's attorneys has any interest contrary to or conflicting with the interests of absent Class members.

76.     The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

77.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues. Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or inefficient to do so. Plaintiff knows of no difficulties in managing this action that would preclude its maintenance as a class action.

78.     Additionally, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making declaratory relief appropriate to the Class as a whole.

## COUNT I

## DECLARATORY RELIEF

79.     Plaintiff incorporates by reference each and every allegation set forth above.

80.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

81.    An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties in that Plaintiff contends and Defendants dispute and deny that the Policy provides coverage to Plaintiff for any current and future lost business income, subject to the limit of liability, for the temporary suspension of Plaintiff's operations.

82.    Plaintiff continues to suffer injury and is at risk of future loss as a result of Defendants' failure to abide by its coverage obligation under the Policy.  Plaintiff has not yet been able to fully open its office since it originally shut down.  Furthermore, the mere occurrence of the COVID-19 virus in the United States in 2020 demonstrates the future risk that Plaintiff could suffer property loss as a result of another widespread virus and related government shutdown orders.

83.    The Policy provides coverage for "direct physical loss of or physical damage."

84.    Plaintiff's loss of use, loss of access, and loss of functionality of the Covered Property when the Mandated Shutdown Rules made it unlawful for Plaintiff to fully access, use, and operate its business at the Covered Property, constitutes a loss to the Covered Property under the Policy.  Alternatively, the ubiquitous nature of the COVID-19 virus caused a loss to the Covered Property by preventing Plaintiff from using the Covered Property for its intended purpose.

85.    Additionally, the Mandated Shutdown Rules or, alternatively, the ubiquitous nature of the COVID-19 virus, caused a physical loss of or physical damage to property other than the Covered Property, thereby invoking coverage under the Policy's "Civil Authority" provision for "actual loss of Business Income" when access to the Covered Property is prohibited by order of civil authority.

CLASS ACTION COMPLAINT

86. Further, the Mandatory Shutdown Rules, or alternatively, the ubiquitous nature of the COVID-19 virus, caused physical loss or physical damage to Plaintiff's "dependent property," thereby invoking coverage under the Policy's "Business Income From Dependent Properties" provision, which provides for the payment of lost Business Income when a Covered Cause of Loss damages "dependent property." As an accounting firm serving the business community, many of Plaintiff's customers, who typically accept Plaintiff's services, suffered physical loss or physical damage to their property.

87. The Policy constitutes a valid and binding agreement obligating the Defendants to indemnify Plaintiff for covered losses. Plaintiff has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Policy and applicable law, or alternatively, Plaintiff has been excused from performance by Defendants' acts, representations, conduct, or omissions.

88. Defendants have failed to indemnify Plaintiff for its covered losses.

89. No exclusion to coverage applies.

90. Plaintiff has suffered and continues to suffer a covered loss under the Policy.

91. Plaintiff, individually and on behalf of the Class, seeks a Declaratory Judgment that there is coverage for its business interruption losses under the Policy.

## COUNT II

## BREACH OF CONTRACT

92. Plaintiff incorporates by reference Paragraphs 1 through 78 above as if fully set forth herein.

93. Plaintiff and Defendants entered into a contract of insurance; here, the Policy.

94. As an insurer, Defendants have a duty of good faith and fair dealing towards its insureds, including the obligation to pay for the financial losses suffered by the Plaintiff and members of the Class because of the Mandated Shutdown Rules.

CLASS ACTION COMPLAINT

95.    Plaintiff and members of the Class had a reasonable expectation that the financial losses suffered because of the Mandated Shutdown Rules would be covered under the Policy.

96.    The Class members entered into a substantially identical policy with Defendants.

97.    Under the Policy, Defendants agreed to indemnify Plaintiff and the Class for their business losses as a result of a covered loss.

98.    Plaintiff and the Class members suffered a covered loss under the Policy.

99.    Plaintiff and the Class members timely submitted a notice of claim and satisfied all conditions precedent to receiving the coverage it purchased from Defendants.

100.    Defendants breached their contract with Plaintiff and the Class members by failing and refusing to provide the contracted for coverage.

101.    Defendants' breach of the contract has caused Plaintiff and the Class to suffer damages in the amount of their unreimbursed business losses or their limits of liability, whichever is lower.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

1)    For a declaration that there is coverage under the Policy for the interruption to Plaintiff's business and the associated business income lost therefrom;

2)    For damages, costs and attorneys' fees; and

3)    For such other relief as the Court may deem proper.

TRIAL BY JURY IS DEMANDED.

Dated: August 26, 2020                **CARLSON LYNCH LLP**

By:  */s/Todd D. Carpenter*

Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:  619-762-1900
Fax:  619-756-6991

17

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CARLSON LYNCH LLP**
GARY F. LYNCH (*to be admitted pro hac vice*)
gynch@carlsonlynch.com
KELLY K. IVERSON (*to be admitted pro hac vice*)
kiverson@carlsonlynch.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel:   412-322-9243
Fax:   412-231-0246

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT